IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SHAMSADEEN IBN PURVIS,      *
                                     *     Civil Case No. AW-08-170
v.                               *     Criminal Case No. AW-04-0495
                                     *
                                     *
UNITED STATES OF AMERICA.     ******

## MEMORANDUM OPINION

Before the Court is a Motion/Petition by the Petitioner/Defendant, Shamsadeen Ibn Purvis, for relief pursuant to 18 U.S.C. § 2255. On June 20th, 2005, and without the benefit of a plea agreement, Petitioner pled guilty to the 3 Count Indictment: Count I, Obstruction of Interstate Commerce by Robbery in violation of 18 U.S.C. § 1951 (a); Count II, Using or Carrying a Firearm During or in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924 ©; and Count III, Felon in Possession of a Firearm in violation of 18 U.S.C. § 922 (g) (1). These are all Class A Felonies. Petitioner was sentenced to a combined 264 months of incarceration with the Bureau of Prisons followed by concurrent three year terms of supervised release. Petitioner's conviction and sentence was affirmed by the United States Court of Appeals for the Fourth Circuit in an unpublished *per curiam* decision dated July 21, 2006.

In this Motion [together with a subsequent Motion to Supplement] Petitioner presents essentially five issues. **First**, Petitioner argues that his counsel failed to permit Petitioner to (peruse and to) participate in pre-trial discovery. **Second**, Petitioner says that his counsel was ineffective by improperly representing to Petitioner that if Petitioner went to trial, the jury would learn about the nature of his prior convictions. **Third**, Petitioner claims that his counsel was ineffective by improperly representing to Petitioner that if Petitioner went to trial he would be impeached by his

prior convictions even though those convictions exceeded ten years. **Fourth**, Petitioner argues that his counsel was ineffective by inducing Petitioner to plead guilty through false information as to the effect of *Shepherd v. United States* and *Taylor*. **Lastly**, Petitioner is his Motion to Supplement, Petitioner claims that he just reviewed his Presentence Report and discovered that relevant information concerning Petitioner's physical condition was omitted from the report. Specifically, Petitioner opines that had this Court been made aware that Petitioner currently has a bullet lodged in his head as a result of being shot in the head, the Court could and would have taken that into consideration in sentencing Petitioner. Petitioner also suggests that the lodged bullet affected Petitioner to the extent that it likely caused Petitioner to have made a hasty decision, such as pleading guilty. The Government has responded to the Petition and the matter is ripe for resolution.

With respect to the claims by Petitioner that his counsel was ineffective, the Court reviews his allegations under the well established standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and [resulting] prejudice. In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as a counsel within the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense. Id. With these principles in mind, let us look at Petitioner's allegations of ineffective assistance of counsel.

First, Petitioner claims to be a victim of ineffective assistance of counsel because his counsel allegedly failed to permit Petitioner to (peruse and to) participate in pre-trial discovery. Beyond Petitioner's own declaration that his counsel did not permit him to look at and review the discovery,

there is nothing in the record to support this claim. In fact, the record in this case (specifically the transcript of the Rule 11 proceeding) belie this claim. On page 11 of the transcript, here are the questions posed by the Court to Petitioner, and Petitioner's responses under oath thereto:

> THE COURT: Are you satisfied with the legal services up to this point that Mr. Flowers has provided to you?
> DEFENDANT: Yes, I am.
> THE COURT: Has he gone through with you all of the elements of these three offenses and explained the defenses that you have or the defenses you may not have, or has he shared the evidence against you and the pros and cons of pleading guilty or not pleading guilty? Has he done that?
> DEFENDANT: Yes, he has.
> THE COURT: Do you have any complaints about what he has done?
> DEFENDANT: No.

A careful review of the pertinent parts of the above referenced transcript leads the Court to conclude that Petitioner's claim that his counsel did not permit him to review the discovery is groundless.

Second, Petitioner asserts that he is a victim of the ineffective assistance of trial counsel because Petitioner's counsel allegedly improperly represented to Petitioner that if Petitioner went to trial, the jury would learn [or in Petitioner's words "hear"] about the nature of his prior convictions. The simple answer to this allegation is that the purported advice by his counsel was generally accurate. Petitioner's prior record caused him to be an armed career criminal. The three crimes which served as predicates for Petitioner's status as an armed career criminal were: armed robbery on April 24, 1981; robbery and assault with a dangerous weapon on September 4, 1981; and robbery with a deadly weapon on September 11, 1981. Had Petitioner gone to trial, the Government would have been required to support the 18 U.S.C. §922 (g) (1) offense (felon in possession of a firearm) with proof of prior conviction of a felony. The Government normally introduces the prior

3

conviction with a certified copy of the conviction from the court of record where the conviction occurred. Many attorneys, however, in order to conceal the nature of the conviction from the jury elect [with consent of the accused] to stipulate to the prior felony conviction element of the offense, which prevents the jury from knowing the precise nature of the prior crime-- although the jury would know that the prior conviction was a felony. The long and short of the matter is that without a stipulation, the jury does, indeed, learn about the nature of a prior conviction. Counsel's advice, then, to Petitioner that had he gone to trial the jury would learn [hear] about the nature of the conviction was accurate advice and did not constitute a defect in performance within the meaning of *Strickland*. Moreover, such generic advice by itself, and without more does not establish any resulting prejudice required by *Strickland*.

Petitioner's third claim is subject to a similar analysis. Petitioner claims that he was the victim of ineffective assistance of counsel when counsel represented to Petitioner that if Petitioner went to trial he would be impeached by his prior convictions even though those convictions exceeded ten years. It is true that, generally, convictions (as those in the instant case) over 10 years old are not admissible to impeach an accused who takes the stand. Yet despite the age of these prior convictions, the Government could have sought under rule 609 (b) Court permission to admit an old prior conviction by providing [pursuant to the rule] sufficient advance written notice of intent to use such evidence. It is also conceivable that the Government could have requested permission from the Court [under rule 404(b)] to introduce evidence of "other crimes" which would bear on issues such as motive, opportunity, intent, knowledge, identity or absence of mistake or accident. With reference to 404 (b) evidence, so long as the Court determined that the probative effect of such evidence was not substantially outweighed by the prejudicial effect on Petitioner (pursuant to rule 403), and so long

as the jury was properly instructed that it could not consider this (other crimes) evidence in connection with the accused's character or trait character, such evidence of other crimes could be introduced.

Whether the Petitioner would have taken the stand had he gone to trial, or whether the Government would have sought permission to use aged convictions, or whether the Government would have sought permission to introduce such convictions as "other crimes" [or bad acts] evidence, or whether the Court would have permitted the use of any prior conviction is, of course, subject to utter speculation. In the instant case, the parties negotiated and consummated a plea. In fact, at the request of the parties and to assist the parties in their plea negotiations, the Court granted their motion for a pre-plea presentence report. Because the Petitioner entered a guilty plea, the parties did not find it necessary to litigate any issues concerning the admissibility of prior or other crimes/convictions. Also, in light of the plea, the parties were not obligated to file any additional requests or motions in preparation for trial. Accordingly, the Court agrees with the Government that the advice allegedly provided by counsel to the effect that Petitioner's prior convictions could be used against him at trial had various trappings of truth. At any rate, the Court does not believe that such advice purportedly given constitutes a constitutional deficiency in performance of counsel. Likewise, Petitioner had not pointed to any sustainable prejudice as is required under *Strickland* had there been any performance deficiency.

Petitioner's fourth ground for relief also centers on an ineffective assistance of counsel. Petitioner claims to be a victim of ineffective assistance of counsel because his counsel allegedly induced Petitioner to plead guilty through false information as to the effect of *Shepherd v. United States* and *Taylor*. Petitioner fails to specify the false information of which he speaks, nor how

Petitioner was induced. Moreover, Petitioner has not set forth or even described in any meaningful way what false information was provided by his counsel as to the effect of *Shepherd* and *Taylor* on his prior convictions. The Court cannot fathom what Petitioner is asserting in this claim. Accordingly, in the absence of any elaboration, the Court finds this fourth claim to be nothing short of a bald allegation and wholly devoid of merit.

Finally, in his Supplement to the Motion, Petitioner advised that he recently reviewed his Presentence Report and discovered that relevant information concerning his physical condition was omitted from the report. Petitioner asserts that had this Court been made aware that Petitioner currently has a bullet lodged in his head as a result of being shot in the head, the Court could and would have taken that into consideration in sentencing Petitioner. Petitioner also suggests that the lodged bullet affected Petitioner to the extent that it likely caused Petitioner to have made a hasty decision in pleading guilty.

While, the Court does not recall whether it had been specifically and particularly apprised by Petitioner that a bullet is currently lodged in his head, the record reflects that the Court had been apprised of the crux of Petitioner's physical condition. As early as the date of the rule 11 plea hearing (June 20th, 2005), Petitioner advised the Court with respect to his problems with his hearing and with his vision. On page 5 of the rule 11 transcript, the Court's questions and the Petitioner's responses under oath, describe the problem Petitioner experienced with his vision and hearing:

> THE COURT: And how would you describe your physical and mental condition right now as we speak?
> THE DEFENDANT: Stable.
> THE COURT: All right. What does "stable" mean? What does "stable" mean? Stable what?
> THE DEFENDANT: I'm legally blind. I'm legally blind and I am only hearing out of one ear, your Honor.

> THE COURT: All right. Are you hearing me now?
> THE DEFENDANT: Yes, I am.
> THE COURT: All right. You say you are legally blind. Do you have any vision?
> THE DEFENDANT: Yes, I have some. I have some vision. I have slight impairment.
> THE COURT: Is there anything–go ahead. Is there anything about your vision or your hearing that is preventing you from understanding me right now?
> THE DEFENDANT: No. I hear what you are saying very clear, Your Honor.

There is additional evidence in the record which established that the Court was very much aware of Petitioner's physical problems. In paragraph 97 (page 17) of the presentence report, the probation agent wrote that Petitioner reported [in the interview with the agent], *inter alia*, that in 1992 he suffered a gunshot to the back of his head, that he suffered a stroke on his left side and, that he was legally blind as a consequence. The agent went on to write in the report that Petitioner indicated that he was hospitalized at the Washington Hospital Center and was then transferred to the George Washington Hospital in Washington, D.C where he was hospitalized for over a year. According to the probation agent (as indicted in her report), she requested records from George Washington Hospital but had not received them at the time the report was filed. It is also, noteworthy, that the probation agent further indicated that Petitioner denied receiving any medical treatment or taking any prescriptions medication at that time. Finally, on page 5 of the January 10, 2006 sentencing memorandum (detailed letter) filed by counsel in support of the Petitioner's sentencing requests, counsel detailed the various physical challenges and problems Petitioner faced. In that memorandum to the court, Counsel went on to stress the need for the Court to provide appropriate medical care as part of its sentencing decision. As a result of counsel's urging, the Court [in its judgment order] recommended to the Bureau of Prisons that Petitioner be incarcerated at FCI, Butler, NC in order that Petitioner be adequately treated.

It is abundantly clear that the Court had been thoroughly advised with respect to a medley of physical issues Petitioner has experienced over the years. This information was known to the court and considered [along with other factors] by the Court prior to sentencing Petitioner. Furthermore, with reference to his decision to enter a guilty plea and his judgment in pleading guilty, the record reflects that Petitioner was specifically asked during the plea colloquy whether any of his hearing and vision issues which Petitioner mentioned had any effect upon his ability to understand what the Court was asking him. Petitioner responded in the negative. There is nothing additional in this record to suggest or even hint that Petitioner's judgment was either impaired or that his ability to have made a knowing, understanding and voluntary decision to plead guilty was affected. Therefore, Petitioner's claim that the Court's lack of specific knowledge that a bullet is currently lodged in his head affected the Court's sentencing is simply not supported by the record. Nor does the record support Petitioner's claim that his judgment and decision to pled guilty was affected by the fact that a bullet was and allegedly is currently lodged in his head.

In sum, the Court has reviewed the current pleadings and the entire files relative to the present motion as well as the underlying criminal case. The Court finds that Petitioner has not demonstrated a legal and cognizable basis for relief. Accordingly, the Petitioner's Motion pursuant to § 2255 is DENIED. A separate Order will be issued.

Date: June 11, 2009

Alexander Williams, Jr.
United States District Judge